We'll hear argument first this morning in Case 11-184, Kloeckner v. Solis. Mr. Schnapper. Mr. Chief Justice, and may it please the Court, the first sentence of Section 7703b2 provides that district courts have jurisdiction over all mixed cases, and that provision is largely dispositive here. The second sentence of Section 7703b2, on which the government relies, is a statute that has clear limitations and it doesn't limit the jurisdiction of federal courts. That subsection is set out at pages 16a to 17a of the government's brief. The first sentence provides that for a described category of cases, they are to be, quote, "...filed under one of the listed federal anti-discrimination statutes." As this Court pointed out in Elgin, all of those are statutes which authorize jurisdiction and claims in district courts. Indeed, in Title VII and the ADEA, that is the only Federal court which is authorized to hear the cases. Mr. Schnapper, could you clarify what the district court, as you see it, does? Does it deal only with the discrimination claim, or does it deal with the MSPB's  Schnapper, With regard to the – when the case gets to the district court, there may be two substantive claims, a discrimination claim and a CSRA claim. Your question, I take it, is about the former. Our view is that the claim is filed and pled, as indeed it was pled in this case, as a discrimination case, in this case under several different statutes. And the complaint here reads very much like an ordinary discrimination complaint. The government may raise that sort of procedural issue as an affirmative defense, and it would be free to do so here. And that happens on a number of occasions. For example, if there were a case in which the plaintiff had not, as required by the regulations, appealed to the MSPB within 30 days of the receipt of the agency decision, the government could move to dismiss that claim on what the lower courts call exhaustion grounds, and the lower courts have repeatedly sustained those motions. But that's an affirmative defense. But the critical point, I gather, is what standard of review the district court will apply to that exhaustion question or the bar question, right? I assume you think that the standard of review in the district court is going to be more favorable to your client than the standard, the arbitrary and capricious standard that would be applicable in the Federal Circuit? I guess I'm trying to figure out. When it's come up, Your Honor, it has generally been a question of law, like whether a 30-day rule had applied. If you had something that was – if there were a factual issue, our contention is that under section 7703C, factual issues have to be decided in no – Why don't we take this very case where the MSPB said that the claim was time-barred. So the government would raise it as an affirmative defense. And the first question would be whether it's an affirmative defense at all. And our position would be that it is not. Not everything that could go awry in the internal procedure is an affirmative defense. One of the central principles of the 1972 amendments to Citle VII was to create an exhaustion regime which is precise, simple, and short. Sotomayor, can I back you up a minute to join the two questions that my colleague posed to you? Let's assume there's a merits-based decision on the CSRA and one on the discrimination. In the normal course, assuming you're not barred by being untimely, you could go to the district court and the district court presumably would have jurisdiction if one is a discrimination-based decision. To decide both questions. What's the standard of review that a court would apply to each of those claims independently or together? I mean, that's – we can then fight about whether the factual issue regarding the timeliness and exhaustion should be subject to one or the other standard of review. But what are the standards of review? They are different. The discrimination claim is dealt with de novo. The intent of Congress was that it would generally be treated like a private discrimination claim. However, the CSRA claim is dealt with under the same standard that would apply in the Federal Circuit. And that's well established. I'm sorry. I didn't mean to interrupt you. That's what the lower courts have been doing, and we don't – we think that's correct. Could you finish your prior answer? You started to say? You started to say that the Civil Service Reform Act made some fundamental change? No, Your Honor. I was talking about the amendments to the 19 – to Title VII in 1972. Prior to that, courts were applying the judicially fashioned exhaustion requirements. And the – Congress made a decision to replace that. As this Court noted in Chandler and in Brown v. GSA, Congress concluded, I think correctly, and the Court's opinion suggests that, that the steps necessary to exhaust were not clear. So the regime established by Section 717 of Title VII, which was adopted in 1972, sets up an exhaustion requirement which is clear, simple, and limited in time. It requires the plaintiff to file a complaint, wait at that point 180 days, and at that point the plaintiff was done and could go to district court. The plaintiff also had the option at that point of going to the Civil Service Commission, waiting 180 days. But as long as a timely complaint was filed, that was all that was required of the plaintiff. And that was a fundamental change in the way this had been dealt with. The ADEA regime, which was adopted in 1974, was actually even simpler, although it's been changed a little bit since. The plaintiff, to exhaust, had to do only one of two things. Either file a complaint with the EEOC, period, or give the EEOC notice that the plaintiff was going to sue and wait 30 days. As the government pointed out in its brief in Stevens, the exhaustion regime under the ADEA didn't in any way address what happened after the complaint was filed. It simply said file the complaint. That is the fundamental principle that's animated the Title VII exhaustion requirement in Title VII and the ADEA. And we don't think the CSRA was written to change that. Indeed, to the contrary, the CRSA has — it doesn't do it so expressly. It incorporates by reference those statutes. It expressly reiterates the de novo exhaustion requirement. It actually shortened the period of time the plaintiff has to wait for misdemeanor cases. Ginsburg. You're talking about the discrimination claim. In your view, could the plaintiff now in the district court say, I'll forget the CSRA remedy. District court, you have authority to hear the Title VII case, the ADEA case, and that's all I need, and so I'm not — I'm abandoning my CSRA. Yes, Your Honor. A plaintiff can do that. Then that would take care of the whole thing you discussed before about the affirmative defense from the government. It would be the plaintiff's choice, I want my Title VII case, and that's it. No, Your Honor. The affirmative defenses could still be raised. It's just that the CSRA claim under Section 7703c would be abandoned. And that's what happened here. It's not uncommon. The CSRA claim involves a right that is much more valuable to the plaintiff in the administrative process. Alitos, what provision authorizes the filing of anything other than a discrimination claim in district court? I don't see it. The statute says cases of discrimination subject to — Cases of discrimination. Cases of discrimination subject to 7702. In 7702 — Yeah, it says shall be filed under Title VII. So you're saying that a non-discrimination claim can be filed under Title VII? No, the way the courts have read this, and I think correctly, is this. If — so this is just one case. It's a little bit like supplemental jurisdiction. So long as the plaintiff is asserting a discrimination claim, the CSRA claim comes along with it. If the plaintiff were to abandon the discrimination claim, then the case would have to go to the Federal Circuit. That's the way the courts have interpreted it. Well, I understand that. A lot of courts have read it that way. I find it difficult to see how it fits into the statutory language. And in particular, since the second sentence of subsection 2 there has its own filing deadline, it seems strange to have a district court review the timeliness of the filing before the MSPB. Well, the second point you make is really separate from the first, because even if only a discrimination claim is filed, the government can assert an affirmative defense. And one possible affirmative defense, which the government has repeatedly asserted successfully, is that the appeal to the MSPB was untimely. So that happens either way. Even if you give up your CSRA claim, they can assert that defense? Yes. Yes. It's because the discrimination statutes themselves have two requirements. You have to have filed a complaint or an appeal, depending on where you are in the process. You have to wait a certain amount of time if you don't have a decision. The statutes themselves don't. I don't understand why you're giving this up. And I don't see any provision that says that, that specifies what the standard of review in the district court is for a nondiscrimination claim. C sets out the standard of review in the Federal Circuit for a nondiscrimination claim. But it pointedly says nothing about the district court. Doesn't that suggest that that claim doesn't go to the district court? Your Honor, that question, of course, isn't here, because we haven't asserted a CSRA claim. And if you have doubts about it, I think we'd reserve that for another case. But we think the courts have treated this as the statute doesn't say claims of discrimination subject to 7702. It says cases of discrimination. And if you look at section 7702, which is set out at page 8A of the government's brief, it describes the cases involved as cases which contain these two elements. They're treated as one case in the administrative process. And it would be highly peculiar for the government, for the statute to take one administrative proceeding and then split it in half. Suppose the Civil Service Reform Act had said nothing at all about suits under the Civil Rights Act, under the Age Discrimination and Employment Act, and so forth. What would the situation be? Wouldn't you have a right to go to district court? Yes. Title VII on all statutes authorize that. Scalia. So to prevent you from going to district court under those statutes, you have to find a repealer contained somewhere in the Civil Service Reform Act, right? That's exactly right. And we think this is a classic example of the application of the rule that implied repeals are disfavored. This statute is quite precise. When it's changing something, it's very specific. The second section, section 7703b2, begins with the words ''notwithstanding'', because it is changing the statute of limitations that would otherwise apply, changing it from 90 days in Title VII to 30 days. So when Congress wanted to change something, it was very specific, but the whole thrust of this statute is to leave in place, except where it very specifically does otherwise, the regime that existed under Title VII and the ADEA. Kagan. Kagan. Could I make sure I understand something that you said, Mr. Schnapper? When you talk about the affirmative defenses that the government can raise, those are exhaustion defenses under the applicable anti-discrimination statute, right? It's whatever exhaustion requirements Title VII sets out or whatever exhaustion requirements the ADEA sets out, is that correct? That's not entirely correct, Your Honor. There are exhaustion requirements in the statute, but these statutes do not contain a time period within which a charge or a complaint must be filed with the agency, and they don't contain a time period within which an appeal must be taken. Those time periods are in the regulations. The lower courts have taken the position that those time periods also have to be complied with, and we think that's correct. In the case of a prisoner's case, those time periods are relevant to the MSPB. And there are also time periods relevant to filing a complaint at the agency level. It's an — in the case of a private discrimination claim, that time period is specified by Title VII. But Section 717 about Federal employees is simply silent. Congress didn't deal with it, but it did authorize the EEOC and the MSPB to write regulations. They have both written regulations that, with regard to the agency, it is the EEOC regulations which set out the time period within which a complaint must be filed. With regard to appeals to the MSPB, both the EEOC and the MSPB have regulations which are the same. Scalia, why isn't that a repealer of what would otherwise be the law under all these civil rights statutes? Why isn't that a repealer of what would otherwise be their right to go to district court? You're saying now you can't go to district court because of these time limits, not even established by statute, but, for Pete's sake, established by regulation. You think that that's an effective repealer of the right to go to district court? We don't — we think not, Your Honor. Again, this doesn't go to subject matter jurisdiction, which is specified in the statute. The statute creates a regime. It doesn't set up time periods. We think the statute should be read to mean that the authority of the government, of the agencies to write regulations, includes regulations setting up time periods. It's just inconceivable that Congress contemplated you would have forever to do these things. And would that put the employee who has a mixed case in the same position as an employee who has a straight anti-discrimination case? Non-mixed case. Yes. Yes. There are regulations governing both. The non-mixed case claim would only be governed by the EEOC regulation. The mixed case claim is governed as well by the time limit in the MSPB regulation, but that's the same as the time limit in the EEOC regulation. Kennedy, I've probably led a charmed life, but I've never heard of mixed case until this matter came before us. And I was — I suppose you have to adopt the phrase, but the statute 7703 just say cases, cases of discrimination, which is what this is. We don't usually think of cases that we call a discrimination case based on whether or not it contains other issues. It's a case. Well, Your Honor, the — you have led a charmed life. I mean, I think that helps you. I'm not sure how that affects you. The phrase mixed case is in the regulations, both of the MSPB, of the EEOC. It is also what's in currency prior to 1978 when Congress was working on this problem. It was already calling these kinds of cases mixed cases. And we haven't touched on this. A mixed case is a case which involves — has two elements. First, it involves what's called under the Civil Service Reform Act an appealable issue. That is an issue which can be appealed to the MSPB, not every other case. Alito Can an employee take a mixed case appeal to the Federal Circuit? You could not take that case to the Federal Circuit without waiving your anti-discrimination claim. That is what — that's the way we read the law, and that is the way the MSPB reads the law. The MSPB regulation expressly provides that if you want to go to the Federal Circuit, you must waive that right. Ginsburg Mr. Snava, can you explain something about the MSPB's role? That is, once you have a final decision from the agency, you could go right to court on the discrimination claim, right? You don't need to go to the MSPB. You don't have to exhaust anything before the MSPB to get your discrimination claim. So how does the possibility of going to the MSPB make the discrimination claim any less ripe for judicial review than it would be if you stopped at the agency level? Well, we — it's our view that once you appeal to the MSPB, putting aside the unusual situation of people who withdraw the appeal, you then must wait under the statute 120 days or until you have a decision. So you're ready to all set and you could go to court after the district court decision, but if you appeal to the MSPB, you then have to wait until 120 days have passed or you have a decision. What are your advantages? You're deciding, you have the final agency decision, you could go right to court on the discrimination claim. What do you gain by invoking the MSPB's authority? What you gain are the rights in section 7701C, which are set out on page 3A of the government's brief. In an appeal to the MSPB, with regard to the civil — the CSRA claim, the burden is on the government to establish, by preponderance of the evidence, that its decision was correct. If you bypass the MSPB and go to district court, then your claim is only a claim under section 7703C, which requires the plaintiff to establish that there wasn't even substantial evidence to support the decision. So the CSRA claim is much more valuable at the MSPB. In terms of discrimination claim, in the real world, that's probably not why people go to the MSPB. The MSPB, according to the only study I've been able to find, out of 2,000 mixed cases, the MSPB actually only found discrimination in four. But a much higher percentage of CSRA claims are successful there. So that's why people go there. Roberts So I suppose if you say, I was fired on the basis of race, and the agency says, no, you were fired because you were incompetent, you could take the incompetence claim to the MSPB, and if you win, saying, no, you were perfectly competent, they shouldn't have fired you, you get that relief and you don't need to proceed with the discrimination. Verrilli, and that's why people go there. That's why people go there. Sotomayor You argued that you were exceeding that dismissals on the basis of jurisdiction should go to the Federal Circuit, but that you were only invoking the exception that procedural dismissals should be permitted to go to the district order or authorized to go. Are you still standing by that distinction? Verrilli, No, no. That was not our distinction. That was the distinction that I think the Tenth Circuit inharms. Sotomayor Yes, but when you argued it below, you argued the exception. You didn't argue the jurisdictional rule. Are you abandoning that distinction? Verrilli, Yes. Our view is that all mixed cases go to the district court. That is the view of the MSPB and of the EEOC and the regulations that the Tenth Circuit offers. Sotomayor But it's not the view of the circuit courts. Verrilli, It's not the view of the circuit courts. Sotomayor Even the courts that, whose exception you invoke. Verrilli, That is not their view, and we think they are. Sotomayor Every circuit court unanimously holds that jurisdictional dismissals should go only to the Federal Circuit. Verrilli, We think that that's wrong. Sotomayor Are you in a, sorry, go ahead, I'm sorry. Should you be arguing this before us? Verrilli, Well, you don't, you don't. Sotomayor Is there a distinction you should abandon here? Verrilli, No, Your Honor. Sotomayor Or at least ask us not to address? Verrilli, You don't need to address it. But we think those decisions are wrong. The statutory arguments that we're making treat, you know, draw no distinction between procedural and jurisdictional. Sotomayor Oh, actually, the 7512 argument has more legs, I think. The point is that you're only permitted to go to district court on issues of discrimination that are within the board's jurisdiction. So if, jurisdiction doesn't make sense. The first one is if jurisdictional issues went to the Federal Circuit, you would have a really bizarre problem of splitting the claim, and here's why. If, under the EEOC regulations, which the government has referred to, if the MSPB holds that it didn't have jurisdiction in a mixed case, the discrimination claim doesn't die. Under the regulations, it goes back to the agency, which then processes it as a non-mixed case. But the plaintiff is still free to challenge the decision of the MSPB that it had no jurisdiction. On the government's view, that would go to the Federal Circuit. So the case would then be pending in two different places. And if the plaintiff came to the end of the line in the MSPB at the agency level and lost, the plaintiff clearly would go to district court. So the case would then be pending in two different places. On our view, everything goes to the district court. Kagan, Mr. Schnapper, if I disagree with everything that you just said, I can still rule for you in this case. Schnapper You can, and you don't need to address what I just said. Kagan Because there does seem to be a good deal of difference between the question what happens to something that is clearly a mixed case, and alternatively, the question of whether something is a mixed case, that is, whether it includes a claim about an action which the employee may appeal to the MSPB. And one could think that questions about what can be appealed to the MSPB ought to go to the Federal Circuit under this statutory language in a way that questions that are involved in this case do not. Schnapper Your Honor, you don't need to rule for that, me on that, but if I could identify another problem before my time runs out, there is a – and it comes up in two ways. Sometimes whether a case is appealable depends on whether there was discrimination. There is a district court decision in Burrell v. Louisiana in which that problem arose. I will spare you this case. Kagan Well, that just makes the next case very complicated, but it has nothing to do with this case. Is that correct? Schnapper Right. But that's why I think if you have doubts about it, you should stay away from it, because that's very bad. In addition, in a constructive discharge case based on sexual harassment, whether there is jurisdiction, the MSPB in deciding whether there is jurisdiction has to decide whether there was sexual harassment. It seems to me you would not want that going to the Federal Circuit. I would like to reserve the balance of my time. Roberts. Thank you, counsel. Ms. Harrington. Harrington Mr. Chief Justice, and may it please the Court. I would like to start, if I could, with Justice Scalia's. I'm sorry. Sotomayor Are you abandoning the jurisdictional procedural distinction as you did in your brief? Are you telling us to rule either completely for you or against you? Harrington That's always been our position, Justice Sotomayor. Our position has consistently been that the only decisions of the MSPB that can get review in a district court are decisions on the issue of discrimination. Sotomayor So you're prepared on behalf of the government to say that if we rule that procedural dismissals should go to the district court, then you then the government will concede that jurisdictional dismissals should as well? Harrington No, Your Honor. Sotomayor Or 75%? Harrington Again, we don't think any of them should. And Sotomayor We don't have to reach that question in this case, but your brief seemed to make the argument that there was no basis for the distinction between procedural and jurisdictional. Harrington I agree that there's no basis for the distinction. And part of that is because, as my friend Mr. Schnapper pointed out, there is an EEOC regulation providing that when the board dismisses a case on jurisdictional grounds, the case can go back to the agency, the agency can essentially reissue its final decision, and then the plaintiff goes into district court. So if the whole point is to find a way for an employee to get into district court on her discrimination claim, we've already had that taken care of in jurisdictional dismissal cases. So the action really here is with procedural dismissals. And if I was – I would like to start with Justice Scalia's line of questions about whether there's been a repeal of the right to go to district court on discrimination claims. And I think our starting point is in the Federal Courts Improvement Act, which is 28 U.S.C. 1295a9, which provides that review of MSPB decisions is exclusively in the Federal Circuit. This Court has recently – most recently in Elgin, but in various cases over the last 25 years, has seen that that is an exclusive branch of judicial review of jurisdiction in the Federal Circuit over MSPB final decisions. And as the Court pointed out in Elgin, the only exception to that is for the subset of final board decisions that are covered in 7703b2. And if you look at 7703b2, the only reference to a type of final board decision – this is at the top of page 17a of the government's brief – is to judicially reviewable actions under section 7702. Now, we put a lot of emphasis on the phrase, judicially reviewable action, and the phrase is only ever used either in or in reference to section 7702. Roberts Now, does that mean that it is not a judicially reviewable action if it is thrown out on a procedural ground? It means that it's not a judicially reviewable action under 7702. It is not. Now, why is that? I mean, we think of a – we review cases on procedural objections all the time, and we think of those as judicially reviewable. It's a real stretch to say simply because it says judicially reviewable, it means judicially reviewable on the merits. Well, in our view, again, because it uses the phrase, judicially reviewable action, under 7702, and that phrase, judicially reviewable action, in the whole U.S. Code is only ever used when you're talking about 7702, in our view, that's a signal that that's a term of art in this context. And so although a dismissal on procedural grounds is a board action subject to judicial review, in our view, it's not a judicially reviewable action under 7702. And so you need to look at 7702 to see how to do that. Could you say that again? Yes. A little more slowly? Yes. A procedural dismissal by the board is a final board action that's subject to judicial review in the Federal Circuit. Okay. It's subject to judicial review. Yes. Now, the next. It does not fall within the term of art, judicially reviewable action under 7702. Okay. So I thought that your argument in the brief reduced to the question that an action subject to judicial review in one section is not judicially reviewable in another. That's right? Say it again. I'm sorry. This is going to happen a lot. More slowly. I thought I heard you to say, and this is what I understood your brief to say, that an action that is subject to judicial review is not judicially reviewable under 7703b2. That's right. It does not fall within the exception to exclusive review. It's a tough argument. It's a tough statute. In our view, our argument is the best reading of the overall statute. And again, because we think judicially reviewable action under 7702 is sort of the linchpin phrase in 7703b2, we want to look to 7702 to how the phrase, judicially reviewable action, is used by Congress in that statute. And the relevant pages here are pages 8a and 9a in the statutory appendix to the government's brief. Very simple question. Yes. When the Federal Circuit was created, this language preexisted its creation, correct? Yes. So could you tell me how, when Congress was writing 7702, it was creating the system that you are advocating, when it had no idea that it would ever create the Federal Circuit? Well, I have two answers. The first is that in the last 25 years, in all the cases where this Court has looked at section 7703 in Lindahl and Fausto, and most recently in Elgin, the Court has interpreted the statute as it exists today, which as it exists today, directs review of board decisions to the Federal Circuit. But the second answer is even for that brief window after the CSRA was enacted, before the Federal Circuit was created, Congress still had taken away jurisdiction from district courts over board decisions and had directed them to the courts of appeals. And this Court recognized in Fausto that that Congress specifically had that intent when it enacted the CSRA. It was tired of this concurrent jurisdiction in all the district courts throughout the country over Federal employment actions, and it wanted to reduce a layer of review and direct them to fewer courts. Sotomayor, that still doesn't answer my question, which is, assuming there is no Federal Circuit, I have to read the language that exists in 7702 and 7703, and I see judicial review, appealable judicial review, used not in the manner that you are describing. I disagree, Your Honor. I mean, and there is nothing in 7702 or 7703 that would indicate that Congress wanted, even in 1978, to have MSPB final decisions reviewed in district court. And again, we don't need to assume that the Federal Circuit doesn't exist today because it does, and that's how this Court has construed the statute for the last 25 years ever since. Kagan, Ms. Harrington, go back to the question that the Chief Justice asked you, because the question was, should we read judicially reviewable action as something different from action subject to judicial review, which is how you would normally read that language? You know, as something different from just final agency action that you can take to a court. Not say in which court, but you can just take to a court. And you're asking us, you said it's a term of art. So I guess the next question is, how do you get the definition of the term of art that you say exists in this statute? Well, you look at 7702, and let me just say, even if you disagree with us that it's a term of art, you see, it's hard to disagree with the fact that it has to be a judicially reviewable action under 7702. That's in the text of 7703b2. Yeah. It has to be an action that, you know, the MSBB is done, and now you have a certain number of days to take it to a court. So that's the normal way you would read that language. But you say no, it really, you know, it includes some kinds of decisions and not other kinds of decisions, and the effect of that is that it's really a switch as to which court you get to take the action to, which is a very counterintuitive way to read this language. So I guess I'm asking you, where do you find the definition of the term of art? And I think what your answer is going to be is this notion, the board shall decide the issue of discrimination and the applicable action. Is that correct? Yes. Can I just take you back one sentence to say the point is not just that the board is done. The point is that the board is done under 7702, that it has issued a decision under 7702. And so then, as you suggest, we look at 7702, and in that provision, Congress specifies various points at which a final board decision under 7702 becomes a judicially reviewable action. The one that's relevant in this case is in subsection A3, which is on page 9A, in the middle of the page there. It says any decision of the board under paragraph 1, so that's 7702A1 of this subsection, it shall be a judicially reviewable action either when it's issued, if the employee doesn't seek the EEOC review, or when the EEOC declines to hear the case. So in our view, there are two indications in A3 that tell you that it has to be a decision on the issue of discrimination in order to be a judicially reviewable action under section 7702. Alito, why doesn't the language that Justice Kagan referred to, the requirement that the board within 120 days decide both the issue of discrimination and the appealable action, mean that the board has to dispose of both the issue of discrimination and the appealable action, not that it must actually adjudicate those two issues? What if you have a threshold, you have a threshold timeliness issue that is completely dispositive? You're saying that this language means the board nevertheless has to decide the merits of the discrimination issue? No, I'm glad you asked that question. The directive in section that you're referring to is at the bottom of page 8A. The directive is that the board shall decide both the issue of discrimination and the appealable action in accordance with the board's appellate procedures. In this case, the court complied with that directive by not deciding the issue of discrimination because the appeal was untimely. And I know that sounds a little strange when I first say it, so let me give you an analogous example. Imagine a State law that directed a DMV to issue a driver's license to any applicant in accordance with the procedures governing such applications. If the DMV required that driver's license applicants either pay a fee or submit to an eye exam, you wouldn't expect that they would have to issue a license to someone who refused to comply with those requirements. In that case, the DMV would comply with the directive that it issue a license in accordance with its procedures by not issuing the license at all. And it's the same thing here. Here the board complied with the directive that it decide the issue of discrimination  and, therefore, not issuing a decision under 77A. Breyer, you don't have to read it that way, do you? I mean, look, it says in A, it says, let's take an employee who's affected adversely, and then it says, alleges that the basis for the action was discrimination. Okay? In that case, the board shall, within 120 days, decide both the issue of discrimination and the appealable action. Say, they decided it. They decided it was out of time. They decided it was barred. They decided da, da, da. I mean, there are a lot of decisions on an issue that a person raises in court, and we don't normally say they didn't decide the issue of the court. It decided it. It decided it was untimely. But I think normally when a court dismisses a case based on timeliness, you don't think of it as deciding the issue of the issue. Oh, well, I see. The issue of the issue of discrimination. I mean, you can read it as saying they have to decide the merits, or you could read it as saying there could be several claims that went on below. Heard him? Decide the discrimination one. Now, you decide the discrimination one. I agree they used the word issue instead of saying decide the discrimination claim. But it says here, he alleges. They could have said decide the allegation. They could have said decide the bad part of the case. But, I mean, why do we want to jump over 14 hurdles to give this narrow interpretation to that word issue, when all that's going to happen is we'll have a new jurisprudence arising? Is a dismissal on the ground that it was an allegation of discrimination, but it wasn't enough to really make out discrimination? It was partial summary judgment. It was a dismissal on the basis of the statement in the complaint. It was — I mean, we can think of 40 different things, perhaps, that are going to be hard to distinguish as to whether they are procedural, jurisdictional, or on the merits. And why do we want to get courts into that, when the simplest thing is the person says, I allege discrimination. There it is, right, in paragraph 1B of his paper. The SPB says, you lose for any reason on that particular one, and now we go to the district court. That's just so simple. That would certainly be simpler, and if it were up to us to make up the rules, maybe that's what we would decide. No, no, no. All we're doing is interpreting what you've said is the word issue, not to be quite so technical as to mean decide on the merits, which it doesn't mean normally. But we're interpreting it to mean decide the allegation that he has raised that he was discriminated against. But what we're trying to do is figure out how much of an exception Congress wanted to create to the exclusive — to the Federal Circuit's exclusive jurisdiction to review MSPB decisions. In our view, its choice of the word issue is important, because it's not just deciding the case that alleges discrimination. It is issue of discrimination. I'm sorry. Sorry, go ahead. There's another hint in paragraph A3, and let me know if you want to jump in, but not just the direction to look at A1, but paragraph A3, another hint that Congress was really talking about cases where the Board decides the issue of discrimination. In paragraph A3, again on 9A, Congress provides that a judicially reviewable action becomes a judicially reviewable action when the employee decides not to seek review from the EEOC or when the EEOC decides not to take the case. Now, the only types of decisions from the Board that the EEOC can review are decisions that reach an issue of discrimination. And so it would be strange to be talking about decisions under A1 that the EEOC could review if you're talking about decisions that don't involve the issue of discrimination. Ginsburg. May I just clarify that if the case goes to the MSPB and the Federal Circuit, Federal Circuit, and the MSPB, that this was untimely found, that's the end of the case, the discrimination claim would never be heard? I mean, the plaintiff could then file a suit in district court and seek equitable tolling for having missed the deadline to file from the date of the final agency decision. And, in fact, that was one of the alternative bases for jurisdiction that was asserted in the district court below in this case. So if the plaintiff then goes to the district court, then what position does the government take? It depends on the case. In this case, we argued against equitable tolling because, in our view, she had missed the deadlines through her own fault. But if there was some reason to think that it wasn't really her fault for missing the deadlines for appealing, so that even though her appeal to the MSPB was, in fact, untimely, it wasn't really her fault, then we might not resist equitable tolling. Ginsburg. Mr. Schnapper told us in his brief, and he repeated it this morning, that the MSPB and the EEOC disagree with your reading of the statute, that they think that the so-called mixed case goes to the district court. I don't think that's correct. I didn't hear him say that, but if he said it, I don't think – I mean, I know it's not correct that the EEOC and MSPB disagree. Ginsburg. But didn't, in the Ballantyne case, didn't the MSPB take the position that it didn't go to the Federal Circuit? That was our position, you know, I think it was 30 years ago now. And since the Ballantyne decision, the government has had the other – has had the position that we're asserting today, which is that the only reason that the MSPB is the position that the MSPB would take today is the position that the EEOC would take today. Yes. Our brief is filed on behalf of all the agencies in the United States that are affected by this. Roberts. Counsel, getting back to judicially reviewable, even if I accept your argument that that's not the same as subject to judicial review, isn't it an odd backhanded way to get to your position? This is not something about provision about what's judicially reviewable and what's not. It's a notice provision. It says these actions have to be filed within 30 days after notice of judicial review. And then you say that judicial reviewability is the key linchpin that bases your argument when it's really just in a sentence about notice. But it's in a provision that's describing the exception to the general rule that's set out in 7703. So the general rule in 7703 is that when you're talking about final board decisions, judicial review of those decisions is in the Federal Circuit. And this is at 16a and 17a in the government's brief. It says, except as provided in paragraph B-2. So when you're looking to B-2, you're asking what subset of final board actions that's the final order or decision, that's the language used in A-1, what subset of final orders or decisions of the Merit System Protection Board fall within B-2. Now, in B-2, the only types of final orders that are described there is at the end of the section, judicially reviewable action under section 7702. Roberts. Roberts. Well, yes, that's where the phrase comes in, but it does seem an odd way to establish that that is the critical element that tells you which provisions you can take forward when it just says your time is 30 days after you get notice of judicial review. And then you, the government, says, ah-ha, judicial review. We think that does not mean subject to judicial review. Judicially reviewable doesn't mean subject to judicial review. So even if you throw out the term of art part of our argument and all you look at is the last two words of that sentence, which is section 7702, you still have to look at 7702 and figure out when Congress told you that a final board decision could be subject to judicial review. And the relevant place for this case where it did that is in section A-3, which is on page 9a. And there, again, it points at A-1, which directs that the board decide the issue of discrimination. So it says a decision under A-1 is judicially reviewable. If a decision does not reach the issue of discrimination, it does not. Roberts. As of. See, it shall be judicially reviewable action as of. Again, it's just going to the timeliness. Right. But again, but the two time triggers would only come into play if a decision reached an issue of discrimination, because the EEOC can't review issue — can't review issue on jurisdictional or procedural grounds. It can only — the EEOC's review of the board's — of a board decision is limited to its review of the board's interpretation of an anti-discrimination law or its application of those laws to a particular case. Ms. Herrington, would you agree that this is a remarkably strange way of Congress trying to accomplish the subjective — I mean, if Congress were really saying we don't want procedural determinations to go to the district court, that's a very easy thing to say. Congress does not need to send you, you know, involve six different cross-references and unnatural reading of statutory language. And, you know, in the end, your argument just is based on this notion that Congress used the word decide rather than dispose of in this single provision. The argument would completely collapse if that were not the case. It just seems like if Congress wanted what you say it wanted, Congress would not have done it in this extremely complicated and backhanded way. I mean, I'm not going to resist the idea that the CSRA is very complicated. I mean, every case this Court has had about the CSRA, they've remarked about how it is a complex statutory scheme. But I think Congress did accomplish in a pretty simple way what you suggest, which is directing that procedural rules should be reviewed in the Federal Circuit. And it did that by making that the background rule. In 7703a and b)(1, it says, Final decisions of the Board are reviewed in the Federal Circuit, full stop only, except as provided in b)(2. And then the question is, well, which of those decisions fall within b)(2? In our view, you should not read that exception more broadly than necessary to accommodate employees' right to have their discrimination claims determined de novo in district court. Here, the Board decision, it decided two things. First was Petitioner's appeal to the Board timely, and second was there a good cause to excuse her untimeliness. There is no reason to think that Congress would have wanted that Board decision to be reviewed anywhere other than the Federal Circuit. The whole point of having the Federal Circuit is to have a unified body of law governing certain things in the country that Congress really thought should be directed to one place, and that included Board decisions. Kagan.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. BMS data about whether a particular state had a relationship with the District   And there is always room for minor disappeals, and you wouldn't have gotten that uniformity anyway. Right. But you would have had more uniformity than you would have had if the cases had continued to go to the District Court, which is what was happening before the CSRA and Congress specifically wanted to stop that process. Sotomayor, you don't have a quarrel with your opposing counsel's position that once the board decides the CSRA claim and the discrimination claim, the District Court reviews them both. Yes. Justice Alito was questioning that, but you don't quarrel with that. We don't quarrel with it. So the lack of uniformity is inherent in this structure. You just want to carve out one piece of it that you say deserves more uniformity. It is true that a small range of procedural issues governing the board's procedures might be heard in District Court, but it is truly a very small universe of issues bordering on non-existent, and let me explain why. As suggested here, the only reason it would be, the only way it would come up is as part of an affirmative defense by the agency, a defense of exhaustion. But then generally speaking, it would have to be a procedural issue that the government that the agency raised before the board and the board rejected. The board's own regulations allow the board to waive any of its regulatory requirements, including timeliness, for good cause. And so the government would have to argue in the District Court that essentially the board abused its discretion by not waiving a procedural objection. And that's a very high hurdle, and I think it's really hard to imagine very many cases in which that's going to come up, where the government is going to make that kind of argument. So although there's potential, there's a potential for a tiny bit of erosion of uniformity under our view. It is really a small universe of issues that could go to dispute. Breyer. Is there anything you want to say on the question of which is worse? That is to say, I get your point on the word issue, but I think you can read the word issue to say there is a contested point as to whether there was discrimination or to say there is a contested point between the parties as to whether the MPSB, whether the plaintiff, has a legal right before the MSB to get the lower, the agency reversed on the issue of discrimination. The latter way favors your opponent, the former favors you. Okay. So we could do either, I guess. The one way, if you win, there will be a body of law about what counts as procedural and what doesn't. That sounds confusing to me. If you lose, I quite agree with you that there will then be different courts deciding different procedural matters where you'd get more uniformity out of the Federal Circuit. Okay. Do you have anything to say about which of those two evils is worse? Is there any reason? I mean, have we any way of knowing? I mean, I think Congress made the determination. Breyer, that's going back to the language, and it's so far in my hypothetical anyway. I think the language at best might be read, that word issue, the way you say, but need not be. But I think you can resolve the ambiguity in the use of the word issue by looking at the rest of A3, which, again, ties the decision under A1 to reviewability by the EEOC. And I don't think there's any dispute that the EEOC can only review board decisions that involve an issue of discrimination, either an interpretation of an antidiscrimination law or an application of such a law to the facts of the case. Sotomayor, I have a problem, because to accept your reading is to say that judicially reviewable action differs between 7702 and the escape hatch, because the only way the escape hatch can work, it too cross-references 7702 in the same way that the provisions you're relying on do, under your reading, both should be given identical meaning because they both cross-reference 7702, and yet your brief says, no, we shouldn't have that absurd result. It seems to me that if you concede that there's an absurd result in applying your interpretation to the escape hatch, by definition, your meaning can't be ascribable to that phrase. Well, so just to be clear, we think the phrase judicially reviewable action should be given the same meaning in Section E that it's given elsewhere in 7702.  Sotomayor, so when does the time frames of the escape hatch commence if the board hasn't rendered any decision on anything? Exactly. If the appeal is still pending before the board, that's when the escape hatch of E comes in, because it's just intended to prevent employees from being held hostage by board inaction. Right. But Justice Sotomayor is right, that when you define judicially reviewable action in your way, then 7702e1b becomes nonsensical, and you have to save it by inserting additional language, by saying, you know, and other kinds of action. It only becomes nonsensical if you think it should apply to cases that are no longer pending before the board under Section 7702. In our view, once the board issued a decision, the decision in this case, it issued a decision under Section 7701, which is the general provision governing board decisions, and then the case was no longer pending under Section 7702. And so it wouldn't make sense to apply the escape hatch to cases in that situation. Well, it wouldn't make sense, but it's what the language would command if judicially reviewable action means what you say judicially reviewable action means. It is true that our common sense gloss on the statute is not found in the text of the statute. But I think once the case has been decided under Section 7701 on procedural grounds, it's no longer a Section 7702 case before the board. And so there's just no reason to think that subsection e would apply in that situation. Sotomayor, you still have an exhaustion argument to raise if we were to send this to the district court? Well, we raise that exhaustion argument as an alternative ground before the district court. The district court construed this case as seeking review of the board's decision, not seeking review of the agency's decision. Petitioner did not challenge that district court holding before the Circuit in her opening brief. She didn't flag that as an issue in the cert petition papers. And so I think, although now she's suggested in the merits briefing that this case this Court maybe should just really decide whether she's seeking review of the agency decision instead of the board decision, in our view that's not really a question that's presented in the case any longer. In our view, she's seeking review of the board decision. The board decision decided that her appeal was untimely, that there wasn't good cause to excuse the untimeliness. There's no indication anywhere in the statute that Congress would have wanted that kind of board decision to be reviewed anywhere other than the Federal Circuit. And so in our view, it does not fall within the exception to exclusive Federal Circuit jurisdiction provided in B-2, because it does not decide the issue of discrimination. Are there no further questions? Thank you. Roberts. Thank you, Ms. Harrington. Mr. Schnapper, you have four minutes left. Mr. Chief Justice, and may it please the Court, I would like to answer the question that the Chief Justice asked yesterday morning in Lozeman. You pointed out that where subject matter jurisdiction is concerned, is it important that rules be clear? And you asked counsel for Respondent, why was the Respondent's rule clearer than the Petitioner's rule? In this case, our rule is demonstrably clearer. The question is, which mixed cases go to the district court? Our answer is all. The government's answer, the rule that is derived from Ballantyne, has confounded the lower court since Ballantyne, and those problems are reflected in the divergent accounts of the rule in the government's brief. There are more than half a dozen of these problems. First, the courts are divided below, as is the government's brief, about whether the government's rule applies to all procedural issues or only to procedural issues that arise before the court reaches the merits. For example, in Hopkins v. MSPB, after the court had resolved the merits, there was a dispute about counsel fees and an argument that the counsel fee application was untimely. The government took the position that that timeliness issue belonged in the district court. Secondly, the lower courts are divided, as is the government's brief, about whether a procedural issue that is related to or intertwined with the merits goes to the district court or the court of appeals. There's a line of cases holding that when the MSPB holds there's no jurisdiction because the discrimination claim is frivolous, that's a procedural jurisdictional issue. It's not a merits issue. And if you look at the opinion in Hill v. Department of the Air Force, you will see a lengthy description of Title VII law in McDonnell Douglas v. Green in the course of a decision by the Federal Circuit holding there's no jurisdiction. Third, it is unclear what constitutes the line between a merits decision and a procedural decision issue. Some things are really neither. For example, there were recurring disputes about whether a settlement was voluntary. Well, it's not the merits of the discrimination case, but it's not procedural in any normal sense of the word. Fourth, there are cases which involve several claims resolved on several different bases. We noted some of them in our reply brief. One claim was rejected on jurisdictional grounds, one claim was rejected on res judicata, and one claim was decided by the board on the merits. It's unclear how that would go. There are also situations in which two cases get filed, one of which and they're MSP decision on procedural grounds, one on the merits. A court in that case thought it ought to just keep them both. It's not clear how that comes out. Fourth, sometimes within the MSP, you got the point. I don't mean to bully you. Thank you, Your Honor. Oh, that was, okay. I didn't mean to. Scalia, you're just keeping score. Okay, I'm sorry. I think we're at six. Checking them off. You're on number five. Okay. An MSPB, ALJ or the board itself could resolve a claim on alternative grounds, as judges do all the time, and say, well, we think this is time barred, but we also find that it lacks merits. I don't know where that goes. There's also a problem, which the briefs address, about factual disputes that arise with regard to jurisdiction or procedure. The 7703C says questions of fact get decided de novo. What does that mean? Let's take, for example, a case in which the claim is that a charge wasn't filed on time with the agency. That's a question of fact. The agency might find that it was timely. There would be a dispute of fact about when the violation occurred, which triggers the limitation period. The agency would make a finding of fact. The MSPB might affirm that finding. The government tells us they would affirm whatever the agency did. The statute seems to say that's got to be decided de novo. The Federal Circuit can't do that. Thank you, Your Honor. Thank you, counsel. Counsel, the case is submitted.